

# FELLHEIMER & EICHEN LLP

Susan Moon O
267.528.0269
susano@fellheimer.net

Five Greentree Center
Suite 104
Marlton, NJ, 08053
T 856-817-6215
F 856-817-6017
www.fellheimer.net

October 4, 2018

**VIA ECF**

Hon. Renee Marie Bumb
United States District Court
District of New Jersey
Mitchell H. Cohen Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

Re:   *World Entertainment, Inc., et al. v. Brown, et al.*,
<u>Civil Action No.: 1:13-mc-00028-RMB (Enforcement Action)</u>

and

*World Entertainment, Inc., et al. v. Brown, et al.*,
<u>Civil Action No.: 1:16-cv-02348-RMB (RICO Action)</u>

Your Honor:

This office represents 1) defendants, Andrea Brown ("**Andrea**") and GRAND ENTERTAINMENT PRODUCTION, LLC ("**GEP**") (collectively, "**Enforcement Defendants**") in the Enforcement Action, and 2) defendants, A. Brown, GEP, Clint Brown ("**Clint**"), TRIBECA GRAND ENTERTAINMENT, LLC ("**TGE**") and THE BROWN FAMILY TRUST DATED JANUARY 14, 2010 ("**Trust**") (collectively, "**RICO Defendants**" and together with Enforcement Defendants, "**Defendants**") in the RICO Action.

Pursuant to the Receivership Order entered by this Court in the Enforcement Action on December 11, 2017, Larry Waslow of UNITED BANKRUPTCY SERVICES ("**Receiver**"), the receiver selected by Plaintiffs, assumed control of the Music Business (defined in the Receivership Order [Doc. No. 20]). Thereafter, the Receiver submitted his informal first letter report dated September 26, 2018 (which I only received by mail on October 1, 2018). By letter dated October 2, 2018, Plaintiffs' counsel in the above-referenced matters 1) accused Enforcement Defendants of fraud in connection with the Receivership Order, and 2) requested that the RICO Action—administratively terminated by the Court on September 15, 2017—be re-activated. *Before* the below-signed

NEW YORK
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
P: 646.833.0383  F: 646.833.0384

PENNSYLVANIA
Two Liberty Place
50 South 16th Street, Suite 3401
Philadelphia, PA  19102
P: 215.253.6630  F: 215.751.1744

NEW JERSEY
Five Greentree Center, Suite 104
Marlton, NJ 08053
P: 856.817.6215 F: 856.817.6017



Hon. Renee Marie Bumb
October 4, 2018
Page Number 2

defense counsel had the opportunity to respond to the Receiver's letter report or Plaintiffs' unfounded accusations and informal letter request to vacate the Court's September 15, 2017 order and re-activate the RICO Action, the Court issued its Text Order dated October 2, 2018 granting Plaintiffs' letter request and set trial for this matter to commence on November 19, 2018 and followed-up with the October 3, 2018 Order Setting Trial Date.

First, with respect to the trial in the RICO Action set to commence on Monday November 19, 2018, both my colleague, John J. Jacko III, Esq. and I have pre-paid out-of-town travel plans during that time. Attorney Jacko has already paid for travel from Friday November 16, 2018, arriving back in town late November 19, 2018. I have already paid for travel from November 15, 2018 to November 23, 2018. Therefore, Defendants respectfully request that trial be rescheduled so that Attorney Jacko and/or I, as counsel familiar with the case, can be available to prepare and try the matter.

Second, as Plaintiffs submitted their request to re-activate by informal letter, Defendants likewise make this letter submission *in lieu* of a more formal filing,[1] respectfully requesting that pursuant to FED. R. CIV. P. 60(b) and L. CIV. R. 7.1(i), the Court reconsider its Order 1) granting Plaintiffs' letter request, and 2) re-activating the RICO Action. The party seeking reconsideration must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion [ ]; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). *See also Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (granting reconsideration), citing *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1990) and L. CIV. R. 7.1(i). *See* Receivership Order ¶ 15.

Here, Plaintiffs' letter request contains misrepresentations and material and significant omissions regarding Defendants' compliance and cooperation with the Receiver. As such, Defendants are entitled to reconsideration (1) because of new evidence that Defendants did not have the opportunity to present before the Court granted Plaintiffs' informal letter request to re-activate; and (2) to prevent a manifest injustice.

### New evidence supports reconsideration.

Plaintiffs, without any evidence, simply accuse Andrea of having i) represented that she would continue to sing; and ii) lied to the Court in making

---

[1] Defendants are prepared to submit a formal Motion for Reconsideration if that is the Court's preference.



Hon. Renee Marie Bumb
October 4, 2018
Page Number 3

such a representation. Plaintiffs' accusation is baseless, false and disingenuous and is contrary to evidence Plaintiffs have omitted.

While we do not have a copy of a transcript of the hearing before Your Honor on September 14, 2017[2], I do not recall any representations as to whether Andrea would "continue to sing" as Plaintiffs allege, as Andrea was **not** present at the September 14, 2017 hearing to state whether she would or would not continue to sing. Moreover, my recollection is that **both** Clint and I stated that we did not have the ability to speak for Andrea as to her intent. In fact, I recall stating that there were only a handful of performances lined up as of that time.

Further, even before the parties agreed to the Receivership Order, Plaintiffs were made well aware of the fact that 1) Andrea could decide not to sing, and that 2) Plaintiffs could not force Andrea to sing. By email dated October 6, 2017, I forwarded a revised version of the draft Order, which included, in part, paragraph 7.M stating:

> Notwithstanding any of the above, the Receiver shall **not** have the authority to enter into any agreement or contract for musical performance on behalf of the Music Business without prior written consent of Andrea Brown.

*See* October 6, 2017 Email with draft Order, attached hereto as **Exhibit A**. In response, Plaintiffs' counsel noted:

> Your paragraph 7M also concern me because it permits Andrea to say "no" to any performance willy nilly and, like paragraph 2, make this order feckless.

*See* October 10, 2017 Email, attached hereto as **Exhibit B**. Even if, *arguendo*, as Plaintiffs wrongly accuse, Defendants had stated that Andrea "would continue to sing," based on ¶ 7M, Plaintiffs certainly understood that Andrea was asserting her right to refuse to sing.

This issue—namely, whether Andrea could refuse to sing—continued to be in dispute as stated in the parties' October 16, 2017 Joint Letter (Doc 13) with draft Joint Proposed Consent Receivership Order, attached hereto as **Exhibit C**. Specifically, under Point 3, Plaintiffs opposed ¶¶ 7M & 13 which prohibited the Receiver from entering into any contract without prior consent of Andrea.

---

[2] Since receiving Mr. Alvstad's October 2, 2018 letter falsely accusing Defendants of misrepresentations, Defendants have inquired with the Court's court reporter about obtaining transcripts from both a) the September 14, 2017 hearing in the RICO Action and b) the November 2, 2017 hearing in the Enforcement Action, and are informed that the court reporter is on medical leave.



Hon. Renee Marie Bumb
October 4, 2018
Page Number 4

Plaintiffs noted: "Andrea Brown can say 'no' to a gig, and this Order would be rendered feckless." Notably Defendants did not assuage Plaintiffs' concern by making any statement that Andrea would continue to sing despite the provision; rather, Defendants specifically noted that Andrea could **not** be forced against her will to provide personal services and that neither Plaintiffs nor this Court can force Andrea to sing against her will. *See* Ex. C at 5.

Even at the November 2, 2017 hearing before Your Honor regarding the proposed receivership order, the parties specifically discussed Andrea's ability to say "nay" to a contract. Based on my review of internal notes regarding the November 2, 2017 hearing, Your Honor noted that Andrea could not be forced to sing as that would make Andrea an indentured servant and Plaintiffs finally **admitted** that "no court on this earth" can make Andrea sing. However, Your Honor noted that even if Andrea does not sing, since the Receiver has the authority to negotiate and enter into contract, the Receiver, in his/her exercise of sound judgment will need to line up musicians before entering into a contract, including a female vocalist other than Andrea. Notably, the Receiver's letter neither 1) describes any attempt by the Receiver (or the Plaintiffs) to obtain Andrea's consent for a proposed performance; nor 2) reports any efforts by him to line up musicians, including a female vocalist other than Andrea, to operate the Music Business to generate income.[3] *See* Receiver's Letter [Doc. No. 22]; Receivership Order ¶¶ 7.N & 13 [Doc. No. 20].

Thus, the December 11, 2017 Receivership Order entered by the Court expressly states that "the Receiver shall not have the authority to make Andrea Brown give a musical performance without prior written consent of Andrea Brown." *See* Receivership Order [Doc. No. 20] at ¶¶7.N. & 13.

In addition, Plaintiffs' baseless accusation of fraud in connection with the Receivership Order is disturbingly disingenuous. By email dated December 19, 2017, on which Plaintiffs' counsel was copied, I confirmed my understanding that there were only two gigs then currently booked and that beyond the two scheduled gigs, Andrea had **no** current plans to work or perform for the Music Business. *See* December 19, 2017 Email attached hereto as **Exhibit D**. Presumably because Plaintiffs understood that they could not force Andrea to sing, Plaintiffs did not raise any issue with Andrea's stated intent not to sing. Instead, Plaintiffs delayed and waited more than ten (10) months to disingenuously complain of Andrea's refusal to sing when it was an issue that

---

[3] Instead of doing that which was authorized by the Receivership Order—managing and operating the Music Business to generate income, the Receiver sought to exceed and do that which was **not** authorized by the Receivership Order—"liquidate or sell any related assets to obtain some funds to disburse." *See* Ex. D. Nothing in the Receivership Order grants the Receiver any authority to liquidate the Music Business. *See* Receivership Order [Doc. 20].



had already been fully addressed and rejected by this Court in the Receivership Order.

Moreover, rather than addressing their execution efforts and Enforcement Defendants' compliance (or even non-compliance, if any) with the Receivership Order, Plaintiffs take the time to accuse Defendants once again of various frauds—alleged frauds that Plaintiffs previously (and repeatedly) asserted but have not been able to establish through any credible admissible evidence and all of which were before the Court when the Court administratively terminated the matter on the eve of trial. Plaintiffs abjectly fail to mention that in compliance with the Receivership Order, Defendants **fully** cooperated with the Receiver and turned over control of the Music Business to the Receiver.

The Receiver's statement that "[t]he LLC's bank account was empty when [he] assumed the position of Receiver," is simply and, for an officer of the Court, disturbingly untrue. As of November 30, 2017, two weeks *before* the Receiver's appointment, the beginning balance of the WSFS account was $1,180.97. *See* WSFS December 2017 statement, attached hereto as **Exhibit E**. After the Receiver's appointment on December 11, 2017, two deposits were made: 1) $7,500 for the first gig, and 2) $4,000 for the second gig. As requested by the Receiver, Andrea provided a list of subcontractors and the amount due to each subcontractor (totaling $7,500) and obtained the Receiver's permission to pay the subcontractors.[4] *See* December 28, 2017 Email and WSFS account statement, attached hereto as **Exhibit F**. Likewise, for the second gig, Andrea again provided a list of subcontractors and the amount due to each subcontractor (totaling $4,000) and attached a WSFS bank account statement.[5] *See* January 5, 2018 Email, attached hereto as **Exhibit G**. Thus, after the last gig and the authorized payments to subcontractors, at least $1,180.97 should have remained in the WSFS bank account and should have been available for disbursement pursuant to the Receivership Order. However, since the Receiver did **not** submit an accounting, Defendants do not know how the Receiver accounted for the $1,180.97 remaining in the WSFS bank account after the last gig.

Thereafter, the Receiver communicated with Andrea on January 26, 2018 regarding IRS Form 1099s and requesting November 2017 and December 2017 WSFS bank statements, all of which Andrea provided. *See* January 26, 2018 Email, attached hereto as **Exhibit H**. To my knowledge, the January 26, 2018 request was the **last** request from the Receiver for any information from Andrea.

Thus, Andrea has been completely cooperative and forthright with the Receiver in accordance with the Receivership Order's terms. Indeed, the

---

[4] Andrea did not receive any payment for her performance. *See* Ex. F at 3 ("Female "$ ( 0.00)).
[5] Again, Andrea did not receive any payment for her performance. *See* Ex. G at 2.



Receiver (nor Plaintiffs, for that matter) neither i) describes his efforts to perform under the Receivership Order, nor ii) identifies a single document or information that the Receiver requested but did not receive from Andrea. As stated throughout the RICO Action, the Music Business is a service-oriented business and apart from bank accounts used by the Music Business, the Music Business did not and does not own any property. Andrea and the Music Business cannot turnover in post-judgment execution proceedings what they do not have.

As such, because Plaintiffs' accusation of fraud in connection with the Receivership Order is baseless, false and disingenuous, Defendants request that the Court reconsider its Order reactivating the RICO Action.

### Re-activating the RICO Action is manifestly unjust.

Defendants also request that the Court reconsider its order re-activating the RICO Action as it is manifestly unjust. *See* Receivership Order ¶ 15. As discussed with the Court at the September 14, 2017 hearing in the RICO Action, Plaintiffs' claims against Defendants are essentially claims for execution on the Judgment Plaintiffs obtained against the Enforcement Defendants in Pennsylvania. It was therefore our understanding that the Court administratively terminated the case to allow the agreed-upon execution to proceed. Accordingly, although Defendants were prepared to proceed with trial at that time, Defendants (and Plaintiffs) agreed to a receivership *in lieu* of a trial and thus, agreed to the termination of the case on the eve of trial. Thus, Plaintiffs' claims in the RICO Action merged into the agreed upon receivership which culminated in the entry of the Receivership Order. Otherwise, there was no consideration for Defendants' agreement to the receivership. To undo the agreement and require Defendants (and Defense counsel) to re-familiarize themselves with the details of the case and all of its factual and legal intricacies to try a complicated RICO action before a jury simply based on Plaintiffs' unsubstantiated, and frankly, false, allegations of fraud, is unjust and unfair to Defendants and not in keeping with the "just, speedy, and inexpensive determination" dictates of FED. R. CIV. P. 1.

Besides, Plaintiffs' ability to establish their claims are highly suspect as they seem incapable of differentiating between fact and fiction. For example, while Plaintiffs may **wish** that Andrea owned real estate in Florida and Nova Scotia (*see* Plaintiffs' Letter at 2), based on all of the evidence disclosed and identified during the course of the RICO Action, the **fact** is that those properties were owned by Clint, **not** Andrea. Likewise, while Plaintiffs may **wish** that Clint said that he was the sole owner of the LLC's bank account (*see* Plaintiffs' Letter at 2), based on evidence, the **fact** is that Clint stated that the "BofA Account is owned exclusively by Tribeca Grand Entertainment, LLC." Just because Plaintiffs repeat fiction *ad nauseam* does not thereby make it fact.

Moreover, as stated in the now pending Motion *in Limine* to Preclude Testimony of David J. Stander, Esquire, Plaintiffs seek to offer improper legal



opinion testimony, which Plaintiffs failed to timely disclose as required by the Court's scheduling order. In addition, even if, *arguendo*, Plaintiffs could somehow establish liability, which they cannot, Plaintiffs cannot establish damages because they do not have a damages expert.

The bottom line is that Plaintiffs essentially seek judgment execution (with which efforts Enforcement Defendants have fully complied as required by the Receivership Order) and proceeding to trial on the RICO Action would be a waste of parties' and the Court's judicial resources, not to mention futile. As such, re-activating the RICO Action based on Plaintiffs' baseless accusations is manifestly unjust.

Therefore, Defendants request that the Court reconsider its Order granting Plaintiffs' letter request to re-active the RICO Action and, once again, administratively terminate this RICO Action. Moreover, as the Receiver himself admits no continued activity (although the Receiver has the authority to continue the business even without Andrea), Defendants request that the Court require the Receiver to submit a final accounting and then issue an order terminating the Receivership.

Respectfully submitted,

Susan Moon O
Enclosure

cc:   Counsel of record via ECF and email
      Stephen L. Alvstad, Esquire

      Receiver via email
      Larry Waslow